John DOE and Mary Doe, his wife pseudonyms for the true identities of plaintiffs in this action, Plaintiffs,

v.

SPECIAL INVESTIGATIONS AGENCY, INC., Anthony Padrone, Thomas G. Murtaugh, Virginia E. Yeager and Thomas Watts, Defendants.

John DOE and Mary Doe, his wife pseudonyms for the true identities of plaintiffs in this action, Plaintiffs,

v.

Anthony PADRONE and Thomas Watts, Defendants.

Civ. A. Nos. 90–1762, 90–6612.

United States District Court, E.D. Pennsylvania.

Nov. 21, 1991.

**22**

Charles W. Elliott, Diane V. Elliott, Thomas R. Elliott, Brose, Poswistilo, Elliott & Elliott, Easton, Pa., for plaintiffs.

Nicholas Noel, III, Richard P. Kovacs, Teel, Stettz, Shimer & Di Giacomo, Ltd., Easton, Pa., Alan S. Gold, Monaghan & Gold, Paula A. Campbell, James Lewis

Griffith, Griffith & Burr, P.C., Philadelphia, Pa., for defendants.

Alan M. Black, Black, McCarthy, Eidelman and Feinberg, Allentown, Pa., for movant.

## MEMORANDUM

TROUTMAN, Senior District Judge.

In the plaintiffs' most recent appeal from a decision of the Magistrate in a discovery dispute, we revisit the issue of privilege in another context.[1]

Here the plaintiffs seek to protect from disclosure to defendants' mental health expert records of psychiatric treatment and other counseling which they have received over the years, including records generated prior to their relationship with the defendants as well as during and after the period of their association.

Defendants contend that examination of such records by their expert witness is essential to preparation of their defense to plaintiffs' claim for intentional infliction of emotional distress.

Plaintiffs argue that this claim, asserted as a pendent state claim to the federal RICO claim which confers jurisdiction on the district court, is unrelated thereto in the sense that damages recoverable under the state law claim are completely dissimilar to those available under RICO. Consequently, plaintiffs argue, state law provides the rule of decision for the claim as to which the purportedly privileged records are sought, and such evidence is neither admissable nor relevant with respect to the federal claim. Thus, plaintiffs further argue that, pursuant to Fed.R.Evid. 501, we are required to apply Pennsylvania state law to the issue whether the plaintiffs' psychiatric/psychological records are privileged,[2] and, therefore, not discoverable.

---

1. We recently affirmed an order of the Magistrate which held that attorney-client privilege did not protect from disclosure to defendants' counsel a document prepared by the plaintiff concerning problems which arose between the parties and ultimately led to the instant lawsuits. *See, Doe v. Special Investigations Agency, et al.*, CA No. 90–1762, *Doe v. Padrone*, CA No.

90–6612 slip op., 1991 WL 197325 (E.D.Pa. Sept. 24, 1991).

2. Fed.R.Evid. 501 provides, in pertinent part, that,

[T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by principles of the common law as they may be interpreted by the

Pennsylvania, by statute, completely prohibits disclosure of such records absent the client's written consent. *See*, 42 Pa.Cons. Stat.Ann. § 5944 (Purdon's Supp., 1991). This statute further provides that communications between psychiatrist/psychologist and patient are privileged to the same extent as those between attorney and client. *Id.*

The Magistrate concluded, however, that federal common law, not state law applies to the privilege issue. This conclusion was based upon the case of *Wm. P. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100 (3d Cir.1982), in which the court discussed the application of Rule 501 where a federal question case also includes pendent state claims. Noting that, "[A]pplying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable", *Id.*, at 104, the court fashioned a bright line rule for such situations, stating unequivocally, "We hold that when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissability rather than any state law privilege, is the controlling rule." *Id.*

It is likely that the federal question/pendent claim issue will commonly arise where the evidence is relevant to the entire case, providing a strong and practical rationale for the *Thompson* holding under most circumstances. Although plaintiffs argue that this rule is, or should be, limited to those situations, the court's holding makes no such distinction. Moreover, we are not convinced that the Court of Appeals would alter the general rule to reach a different result if confronted with the present circumstances, since there are sound policy reasons for maintaining a bright line rule even where the material claimed to be privileged is relevant only to the state claim.

■ In the first instance, federal procedural rules, including rules of evidence, are generally applicable in federal court, even in diversity cases, where state law provides

the substantive rule of decision. *See, Bushman v. Halm*, 798 F.2d 651, 660, n. 11 (3d Cir.1986). Thus, Fed.R.Evid. 501 itself represents a departure from generally applicable federal court practices and procedures.

Second, both broad pretrial discovery and narrow construction of privileges are favored in federal practice. *See, e.g., Wei v. Bodner*, 127 F.R.D. 91 (D.N.J.1989) and cases cited therein.

■ These accepted and well-settled policies are consistent with a narrow construction of Rule 501 insofar as it addresses application of state law to issues of privilege and, therefore, amply support a general rule that federal common law is applicable to privilege issues in all cases involving a federal question, regardless of the presence or nature of any pendent claims.

In addition, plaintiffs alone delineate the issues in a case by deciding which claims to plead and by choosing the forum in which to proceed. It is true that considerations of judicial economy reasonably suggest that pendent state claims should be tried in the same action with federal claims. The same set of facts often support several causes of action, however, and plaintiff is entirely free to balance the various risks and benefits to the litigation of framing a federal claim from the operative facts or foregoing it in order to gain the applicability of state procedures which, for a variety of reasons, may be more favorable in specific circumstances. Similarly, plaintiffs with a substantial federal claim may elect not to plead a particular pendent claim in light of the discovery and evidentiary burdens imposed by proceeding on that claim in federal court. Finally, with respect to some federal claims, state courts have concurrent jurisdiction with the district courts. Thus, it is often possible to pursue a federal claim in state court. We do not believe that it is the function of the federal courts to lighten plaintiffs' burden of balancing the various considerations involved in mak-

courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to which State law supplies the rule of decision, the

privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with state law.

ing such choices by carving out an exception to a general rule for a particular set of difficult circumstances, applicable to particular plaintiffs, in an attempt to eliminate a particular disadvantage of proceeding in federal court. This is especially true where, as here, easing the potential disadvantage of a narrower construction of privilege under Rule 501 of the Federal Rules of Evidence can only be accomplished by complicating a definitive and precedential interpretation of the Rule. To distinguish the *Thompson* case as plaintiffs here suggest would shift the burden to the courts to first create, and then, ever afterward, determine the applicability of an obscure exception to the accepted interpretation of Rule 501, tailored to uncommon circumstances. Such a result, reached solely to accommodate the plaintiffs in this case, would prove to be a perfect exemplar of the old truism that hard cases make bad law.

■ Plaintiffs next argue that even if we determine, as we now have, that the federal rule of privilege applies, we should give it the same content as the Pennsylvania statute, *i.e.,* hold that communications to licensed psychologists or psychiatrists are absolutely privileged to the same extent as attorney/client communications. Alternatively, plaintiffs ask us to hold that, under the circumstances of this case, the plaintiffs' interest in protecting the absolute confidentiality of the psychotherapeutic relationship outweighs the defendants' interest in obtaining the information.

We see nothing clearly erroneous or contrary to law in the Magistrate's decision to permit defendants' mental health expert to examine the plaintiffs' psychotherapeutic records. As noted in the Magistrate's memorandum, defendants face serious and very damaging allegations in this case. They are entitled to all available information relating to the plaintiffs in order to pursue a vigorous defense, provided, of course, that the Court maintains sufficient safeguards to protect the plaintiffs' equally serious and important interest in maintaining the privacy of their medical records.

Contrary to plaintiffs' suggestion, we do not reach this conclusion because we believe that the plaintiffs have waived an absolute privilege by pleading a claim for intentional infliction of emotional distress. Rather, our conclusion is based upon the policies underlying the Federal Rules of Evidence and Civil Procedure, which, as noted, favor full access to information necessary to pursuing or defending against claims made in litigation, for the benefit of all parties involved. Moreover, we conclude that the legitimate interests of both sides have been served by the Magistrate's order, particularly since the plaintiffs' real names have not been disclosed in this case.

To the extent, however, that plaintiffs feel the need for additional protection, the Court will fashion an order to make explicit the protections already inherent in the Magistrate's order. In addition, we note that our decision concerning privilege in this matter applies only to the discovery phase of this case, including the preparation of an expert report. We are not, at present, ruling on the admissability at trial of any document or record relating to the psychotherapeutic treatment of the plaintiffs.

## ORDER

And now, this 20th day of November, 1991, upon consideration of plaintiffs' appeal from and objections to the order of the Magistrate dated August 29th, 1991 (Doc. # 79), IT IS HEREBY ORDERED that the appeal is DENIED and the order of the Magistrate is AFFIRMED.

IT IS FURTHER ORDERED that plaintiffs shall produce their psychological and psychiatric records within ten (10) days of the entry of this order upon the record, subject to the following restrictions:

1. Disclosure of such records is limited to a psychiatrist or licensed psychologist engaged by the defendants, and shall be used by such mental health expert for the purposes of this case only;

2. Plaintiffs' names shall be redacted from such records;

3. Disclosure of any expert report generated by examination of such records shall be limited to defendants' attorneys, plaintiffs' attorneys, plaintiffs' mental health expert, if any, plaintiffs themselves and the Court, if necessary;

4. Motions relying upon or making any reference to defendants' expert report or the records upon which such report is based, if any, shall be filed under seal.

IT IS FURTHER ORDERED that plaintiff's Motion to Stay Order of the Magistrate, (Doc. # 80) is DISMISSED as moot.