**Patrick RICHARDSON, Plaintiff,**

**v.**

**SEXUAL ASSAULT/SPOUSE ABUSE RESOURCE CENTER, INC., et al., Defendants.**

**Case No. MJG–09–3404.**

United States District Court,
D. Maryland,
Northern Division.

Feb. 8, 2011.

David R. Burroughs, Law Office of David R. Burroughs Esq., North East, MD, for Plaintiff.

Margaret Fonshell Ward, Ward and Herzog LLC, Baltimore, MD, for Defendants.

### MEMORANDUM AND ORDER

PAUL W. GRIMM, United States Magistrate Judge.

This Memorandum and Order addresses the claims of privilege that counsel for Defendants Sexual Assault/Spouse Abuse Resource Center, Inc. ("SARC"), Luiza Caiazzo-Nutter, and Stephanie Powers made at the December 7, 2010 hearing with regard to SARC's file for its client, Sherri Richardson (Plaintiff Patrick Richardson's ex-wife); the December 10, 2010 letter that Plaintiff's counsel submitted in opposition to Defendants' claims of privi-

lege, ECF No. 73, and the December 22, 2010 letter that Defense counsel submitted in response to Plaintiff's counsel's letter, ECF No. 79. Defendant SARC submitted the file in question, which Plaintiff had sought through document production requests propounded on each Defendant, to my chambers on December 14, 2010 for an *in camera* review. The documents in SARC's file are bates stamped 1–85. In their privilege log, Defendants claim that the psychotherapist-patient privilege applies for pages 1–32, 37–71, and 83–85; the attorney-client privilege applies for pages 73–82; and pages 33–36 and 72 are not privileged. For the reasons that follow, I find that pages 1–7, 12–30, 40–71, 73–82, and 83–85 are privileged, that Defendant Powers has standing to assert the psychotherapist-patient privilege, and that neither privilege is waived. This Memorandum and Order disposes of ECF Nos. 73 and 79.

## I. Psychotherapist-patient privilege

 The Supreme Court recognized the psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), in which it held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." The privilege recognizes "'the imperative need for confidence and trust'" between the patient and the service provider and "is designed to avoid deterring people from seeking treatment for fear that they will suffer a disadvantage in later litigation." *Jacobs v. Conn. Cmty. Tech. Colls.*, 258 F.R.D. 192, 195 (D.Conn.2009) (quoting *Jaffee*, 518 U.S. at 11, 116 S.Ct. 1923); *see Vasconcellos v. Cybex Int'l, Inc.*, 962 F.Supp. 701, 707–08 (D.Md.1997) (same). To assert this privilege, a party "must show that the allegedly privileged communications were made (1)

confidentially (2) between a licensed psychotherapist and her patient (3) in the course of diagnosis or treatment." *In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 73 (1st Cir.1999). The privilege is impliedly waived by the patient when the interests of fairness require waiver, such as "when a plaintiff puts his or her mental condition at issue in the case" and other instances "'when the party attempts to use the privilege both as a shield and a sword.'" *Jacobs*, 258 F.R.D. at 195 (quoting *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir.2008) (citation and quotation marks omitted)); *see Vasconcellos*, 962 F.Supp. at 708 (same).

Having reviewed the documents *in camera*, the Court is satisfied that pages 1–7, 12–30, 40–71, and 83–85 contain confidential communications between Ms. Powers and Ms. Richardson and notes taken in the course of diagnosis or treatment. *See In re Grand Jury Proceedings*, 183 F.3d at 73. However, it is undisputed that Ms. Powers was not a licensed social worker at the time she worked with Ms. Richardson. On that basis, Plaintiff contends that the psychotherapist-patient privilege does not apply to any documents in SARC's file. Pl.'s Ltr. 2.

The Supreme Court extended the privilege to licensed social workers engaged in psychotherapy. *Jaffee*, 518 U.S. at 15, 116 S.Ct. 1923. Yet, the Supreme Court "explicitly left to later courts the task of 'delineat[ing] [the] full contours' of the privilege." *Oleszko v. State Comp. Ins. Fund*, 243 F.3d 1154, 1157 (9th Cir.2001) (quoting *Jaffee*, 518 U.S. at 15, 116 S.Ct. 1923). The District of Connecticut stated that the privilege covers a patient's confidential communications with a licensed psychotherapist, psychiatrist, psychologist, or social worker, as well as "notes made during the course of treatment." *Jacobs*, 258 F.R.D. at 195 (citing *Jaffee*, 518 U.S.

at 15–16, 116 S.Ct. 1923). Of import, the Ninth Circuit held that "the psychotherapist-patient privileged recognized in *Jaffee* extends to *unlicensed* counselors employed by the SCIF's EAP."[1] *Oleszko,* 243 F.3d at 1157 (emphasis added). Other courts have reached similar conclusions, *id.:*

> In *Greet v. Zagrocki,* 1996 WL 724933, *2 (E.D.Pa.1996), the court held that EAP personnel were covered under the privilege recognized in *Jaffee. United States v. Lowe,* 948 F.Supp. 97, 99 (D.Mass.1996), extended the psychotherapist-patient privilege to rape crisis counselors who were neither licensed psychotherapists nor social workers but were under the direct control and supervision of a licensed social worker, nurse, psychiatrist, psychologist, or psychotherapist.

In *Lowe,* the court observed that, " '[a]s of December 1995, twenty-seven states and the District of Columbia have enacted statutes that protect from disclosure, to differing degrees, confidential communications that arise from the relationship between sexual assault and/or domestic violence victims and their counselors.' " 948 F.Supp. at 99 (quoting U.S. Dep't of Justice, *Report to Congress: The Confidentiality of Communications Between Sexual Assault or Domestic Violence Victims & Their Counselors, Findings and Model Legislation,* 3 (1995)).

In extending the privilege to unlicensed EAP counselors, the Ninth Circuit considered the Supreme Court's "three main rationales for extending the privilege" to licensed clinical social workers, namely, that (1) "social workers provide a significant amount of mental health treatment"; (2) "social workers often serve the poor and those of modest means who cannot afford a

psychiatrist or psychologist, 'but whose counseling sessions serve the same public goals' "; and (3) "the vast majority of states extend a testimonial privilege to licensed social workers." *Oleszko,* 243 F.3d at 1157 (quoting *Jaffee,* 518 U.S. at 16, 116 S.Ct. 1923). The Ninth Circuit concluded that "[t]he reasons for recognizing a privilege for treatment by psychiatrists or social workers apply equally to EAPs." *Id.*

■ Here, "Ms. Powers provided services to SARC's client under the direct supervision of Stephanie McAtee, who is and was at the time a licensed counselor." Defs.' Ltr. 2–3. Notably, under the supervision of licensed social workers, unlicensed counselors also provide mental health treatment and often serve "the poor and those of modest means who cannot afford a psychiatrist or psychologist," as they are providing the services of a social worker, albeit under supervision. *See Oleszko,* 243 F.3d at 1155. Further, as noted in *Lowe,* the majority of states protect confidential communications between victims of sexual assault or domestic violence and their counselors, regardless of the counselors' licensure. *See* 948 F.Supp. at 99. Therefore, this Court concludes that the same rationale that the Ninth Circuit employed applies to extend the privilege to an unlicensed counselor, such as Ms. Powers, who worked under the supervision of a licensed social worker to make counseling services available. Thus, the psychotherapist-patient privilege applies to Ms. Richardson's confidential communications with Ms. Powers in the course of diagnosis or treatment, i.e., pages 1–7, 12–30, 40–71, and 83–85 of SARC's file. *See Jaffee,* 518 U.S. at 15, 116 S.Ct. 1923.

---

1. "SCIF's EAP" stands for the State Compensation Insurance Fund's Employee Assistance Program, a program "designed to assist employees in identifying and resolving personal issues, ranging from health, marital, and financial concerns to substance abuse and emotional problems." *Oleszko,* 243 F.3d at 1155.

■ Plaintiff argues that, if the psychotherapist-patient privilege applies, Defendants lack standing to assert the privilege because any such privilege "belongs to Sherri Richardson," who "has lodged no objection to the release of the documents nor filed any motion with this or any other Court." Pl.'s Ltr. 1–2. Defendants insist that, "[w]hile it is generally the case that the privilege belongs to the patient, and that SARC would not have an independent right to assert the privilege, SARC does have both the standing and the obligation to assert the privilege when the patient is not a party to the case and where the discovery request has been directed solely to SARC." Defs.' Ltr. 1.

Various courts have recognized a psychotherapist's right to assert privilege on behalf of the patient. *See United States v. Hansen,* 955 F.Supp. 1225, 1226 (D.Mont. 1997) (stating that "[m]ost jurisdictions allow a psychotherapist to assert the privilege on behalf of a patient" and citing as examples Ala. R. Ev. Rule 503(c); Fla. Stat. Ann. § 90.503(3)(d); Haw.Rev.Stat. § 626–1, R. 504.1(c); N.J. R. Ev. Rule 505; Okla. Stat. Ann. tit. 12, § 2503(C); Ore. Rev.Stat. § 40.230 Rule 504(3)(d); concluding that psychotherapist had standing to assert privilege on behalf of deceased patient); *In re August, 1993 Regular Grand Jury (Hospital Subpoena),* 854 F.Supp. 1380 (S.D.Ind.1994) (stating that "under Rule 504(c) '[t]he person who was the psychotherapist may claim the privilege but only on behalf of the patient,' and '[h]is authority so to do is presumed in the absence of evidence to the contrary'") (quoting Proposed Fed.R.Evid. 504(c)); *see also In re Zuniga,* 714 F.2d 632, 635, 639 (6th Cir.1983) (recognizing psychotherapist-patient privilege and addressing psychotherapist's claim of privilege); *In re Grand Jury Subpoena (Psychological Treatment Records),* 710 F.Supp. 999, 1012, 1019 (D.N.J.1989) (same). This Court is satisfied that Ms. Powers, an unlicensed counselor working under the supervision of a licensed social worker, had standing to assert the psychotherapist-patient privilege on behalf of Ms. Richardson.

## II. Attorney-client privilege

■ The attorney-client privilege is "one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998); *see Mohawk Indus., Inc. v. Carpenter,* —— U.S. ——, 130 S.Ct. 599, 606, 175 L.Ed.2d 458 (U.S.2009) (same); *Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488 (1888) (recognizing attorney-client privilege). The purpose of the attorney-client privilege is "to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin,* 524 U.S. at 403, 118 S.Ct. 2081 (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

■■ The Fourth Circuit adopted the "classic test for application of the attorney-client privilege" as set forth in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950):

The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact to which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceed-

ing, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982) (per curiam) (quoting *United Shoe* ); *see United States v. Lentz,* 524 F.3d 501, 523 (4th Cir.2008) (quoting *Jones* ). Put another way,

> [F]our elements are required to establish the existence of the attorney-client privilege:
>
> > (1) A communication;
> > (2) made between privileged persons;
> > (3) in confidence;
> > (4) for the purpose of seeking, obtaining, or providing legal assistance to the client.
>
> Besides the existence of these elements, the privilege must be affirmatively raised and cannot have been waived.

Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 65 (5th ed. 2007) (quoting *Restatement, The Law Governing Lawyers* § 118 (Tentative Draft No. 1, 1988)); *see United States v. Cohn,* 303 F.Supp.2d 672, 683 (D.Md.2003); *Burlington Indus. v. Exxon Corp.,* 65 F.R.D. 26, 37 (D.Md.1974). In applying these elements, courts have narrowly construed the attorney-client privilege. *NLRB v. Harvey,* 349 F.2d 900, 907 (4th Cir.1965) (" 'The privilege remains an exception to the general duty to disclose.... It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation for truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principles.' ") (quoting 8 J. Wigmore, *Evidence* § 2291, at 554 (McNaughton rev. ed. 1961)). The client, as the holder of the privilege, *Hawkins v. Stables,* 148 F.3d 379, 384 n. 4 (4th Cir.1998), has the burden of proof. *See Jones,* 696 F.2d at 1072.

Plaintiff argues, in a footnote, that the attorney-client privilege does not apply because, he claims, Ms. Powers testified in her deposition that "the helpline is not a legal helpline but if the person ultimately wants legal representation the helpline person will give them the number for the legal aid department." Pl.'s Ltr. 2 n. 1. Defendants do not address this argument.

 Pages 73–82 are five 2–page documents, each labeled "LEGAL HELPLINE FORM." They document Ms. Richardson's calls to the helpline, explaining her circumstances and seeking legal assistance, and the helpline worker's responses to Ms. Richardson's requests. Thus, the documents clearly are confidential communications "for the purpose of seeking ... legal assistance." Epstein, *supra,* at 65. For purposes of the attorney-client privilege, the privileged persons are the one who "is or sought to become a client" and that person's potential attorney or the attorney's subordinate acting in the attorney's stead. *See Jones,* 696 F.2d at 1072. With regard to the attorney's "subordinate," courts have extended a derivative privilege to retained professionals who assist the attorney to better understand the facts in providing competent legal advice to the attorney's client. *See, e.g., United States v. Kovel,* 296 F.2d 918, 921 (2d Cir.1961) ("[T]he complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others; few lawyers could now practice without the assistance of ... aides of other sorts."). The forms reviewed *in camera* show that Ms. Powers "sought to become a client." *See Jones,* 696 F.2d at 1072. Even if the helpline is separate from and makes referrals to the legal aid department at SARC, the helpline workers operated as subordinates to SARC attorneys, gathering information that could assist the attorneys in understanding the case. *See*

*Kovel,* 296 F.2d at 921. Therefore, they and Ms. Powers are privileged persons, and the attorney-client privilege applies to pages 73–82. *See* Epstein, *supra,* at 65.

### III. Waiver of psychotherapist-patient privilege and attorney-client privilege

 With regard to waiver, Plaintiff argues that Defendants waived the psychotherapist-patient privilege and attorney-client privilege by failing to assert these privileges "until five (5) months after responding and objecting to Plaintiff's discovery and after multiple telephone conferences and letters ... discussing their confidentiality claim." Pl.'s Ltr. 2 & n. 1. In its October 28, 2010 Memorandum and Order, 270 F.R.D. 223 (D.Md.2010), this Court recognized that Defendants had not asserted privilege initially, mistakenly relying instead on claims of confidentiality, and this Court instructed Defendants to particularize its claims of privilege and identify the applicable privilege. Mem. & Order, 270 F.R.D. at 225, ECF No. 53. It is true that, with regard to interrogatories, "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed.R.Civ.P. 33(b)(4). However, while this Court does not condone the assertion of privilege months after Rule 34 production, neither Fed.R.Civ.P. 26(b)(5)(A) (manner of claiming privilege) nor Fed.R.Civ.P. 34(b)(2)(A) (time to respond to document requests) provides that a failure to make a timely claim of privilege categorically constitutes a waiver of that privilege. Rather, "[i]mproper assertion of a privilege *may* result in a waiver of that privilege." *Cappetta v. GC Servs. Ltd. P'ship,* No. 3:08cv288, 2008 WL 5377934, at *4 (E.D.Va. Dec. 24, 2008) (emphasis added); *see Smith v. James C. Hormel School of Va. Inst. of Autism,* No. 3:08cv00030, 2010 WL 3702528, at *4 (W.D.Va.2010) (collecting cases including *Herbalife Int'l, Inc. v. St. Paul Fire &*

*Marine Ins. Co.,* No. 5:05cv41, 2006 WL 2715164, at *4 (N.D.W.Va. Sept. 22, 2006) ("Failure to timely produce a privilege log or the production of an inadequate privilege log may constitute a waiver of any asserted privileges.")). Because Defendants initially raised issues of confidentiality and ultimately asserted the psychotherapist-patient privilege and attorney-client privilege, this Court concludes that they did not waive either privilege through their delay.

 Alternatively, Plaintiff alleges that Ms. Richardson waived any applicable privilege because she referred to her interactions with SARC in state court hearings and "authorized and requested that Ms. Powers publish" a Service Summary and a letter that Ms. Powers wrote, stating that Ms. Richardson was "a victim of Mr. Richardson's emotional and economic abuse," to the parties to the state court proceedings, their counsel, the state court, and the person conducting the psychological evaluation with regard to custody. Pl.'s Ltr. 2 n. 1, 3, 5. Defendants counter that "Ms. Richardson's mere statements that she was receiving services from SARC are not revelations of privileged communications between her and the therapist," and "[n]either is the Service Summary" because "it recites only the dates of service, the types of service received, and an assessment of the reason why Ms. Richardson was seeking and receiving services." Defs.' Ltr. 3. Indeed, "the identity of a patient or the fact and time of his treatment does not fall within the scope of the psychotherapist-patient privilege." *See In re Zuniga,* 714 F.2d at 640. Therefore, disclosure of an individual's receipt of services is not tantamount to a disclosure of confidential information and does not waive the privilege that may be associated with any confidential information. *See id.*

■ With regard to waiver of the psychotherapist-patient privilege for the information to which it does apply, i.e., the substance of SARC's files, *United States v. Shrader*, No. 1:09–0270, 2010 WL 4781625 (S.D.W.Va. Nov. 16, 2010), is informative. There, the defendant sought records of counseling that "DS" received "as a consequence of Defendant's conduct." *Id.* at *1. The defendant argued that DS waived the psychotherapist-patient privilege because DS has disclosed to the West Virginia Court of Claims that she received counseling services from Village Counseling Services. *Id.* The court concluded that DS has not waived her privilege because the court knew "of no disclosure of any information pertaining to DS's counseling with VCS beyond the mere fact of it and now the West Virginia Court of Claims' award to DS for the expense of it." *Id.* at *2. The court elaborated: "Little more is known now about DS's counseling with VCS as Defendant is approaching sentencing than was known as Defendant was awaiting trial, and nothing is known about the substance of it." *Id.* Here, Ms. Richardson did not disclose the substance of the counseling she received from SARC; she revealed little "beyond the mere fact of it," *see id.,* which was not privileged, *see In re Zuniga,* 714 F.2d at 640. Moreover, the Service Summary only pertained to the "contact between the legal department and Patrick and Sherri Richardson"; it does not address any non-legal counseling that Ms. Richardson received. Dec. 7, 2010 Disc. Status Conf. Ex. Therefore, Ms. Richardson has not waived the psychotherapist-patient privilege through these minimal disclosures.

■ Turning to the documents withheld on the basis of attorney-client privilege, the information that Ms. Powers actually disclosed constitutes a waiver of the attorney-client privilege. *See Fed. Elec. Comm'n v. Christian Coalition,* 178 F.R.D. 61, 71 (E.D.Va.1998) (stating that waiver occurs when a privileged communication is disclosed to a third party at a later date); *see also* Rule 502(a) (scope of waiver extends to disclosed information). Yet, Rule 502(a) provides that the scope of that waiver is limited to what was actually disclosed and does not constitute broader subject-matter waiver, unless (1) the waiver is "intentional," in which case the scope of the waiver extends to (2) "the disclosed and undisclosed communications or information concern[ing] the same subject matter," but only if (3) the undisclosed communications/information "ought in fairness be considered together" with the disclosed communications/information. Defendants do not contest that Ms. Richardson's disclosures were intentional, and the *in camera* review demonstrated as much. Insofar as the Service Summary explained that Ms. Richardson sought SARC's legal services, the *in camera* review showed that some of the undisclosed communications concern the same subject matter. *See* Fed.R.Evid. 502(a). However, the *in camera* review also showed that fairness does not require that the undisclosed documents be considered with the disclosed documents because there is no evidence of misleading or unfair selective disclosure of attorney-client privileged information. *See id.;* Fed.R.Evid. 502 Advisory Committee's Note to subdiv. (a) Therefore, the attorney-client privilege is not waived as to the undisclosed documents.

## IV. Conclusion

In sum, the psychotherapist-patient privilege applies to pages 1–7, 12–30, 40–71, and 83–85 of SARC's file, and Ms. Powers had standing to assert the psychotherapist-patient privilege on behalf of Ms. Richardson. Also, the attorney-client privilege applies to pages 73–82 of SARC's file. Further, the psychotherapist-patient privilege is not waived, and the attorney-client

privilege is not waived with regard to the undisclosed information.

The *in camera* review showed that pages 8–11, 31–39, and 72 of SARC's file are not privileged. Therefore, Defendants are directed to produce any of these pages that are relevant to Plaintiff's production requests.